## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER ARGUIJO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-cv-05751 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| UNITED STATES CITIZENSHIP AND | ) | |
| IMMIGRATION SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer Arguijo is a Honduran national and citizen who entered the United States in 1998 to live with her mother. Upon her mother's marriage a year later, Arguijo became a stepchild to a United States citizen referred to here as F.M. While Arguijo lived with her mother and F.M., she was abused by F.M. Ultimately, Arguijo's mother divorced F.M. Several years later, Arguijo sought to file a self-petition for legal status pursuant to the immigrant provisions of the Violence Against Women Act ("VAWA"), 8 U.S.C. § 1154. Defendant United States Citizenship and Immigration Services ("CIS") denied her petition because she could not demonstrate the existence of a qualifying relationship. Specifically, CIS found that Arguijo could not be considered F.M.'s stepchild because F.M. and her mother were no longer married. Arguijo subsequently brought this action challenging the denial of her self-petition and naming as Defendants CIS; Chad Wolf, Acting Secretary of the United States Department of Homeland Security; L. Francis Cissna, Director of CIS; Barbara Velarde, Chief of the Administrative Appeals Office of CIS; and Michael Paul, Acting Director of the Vermont Service Center of CIS

(hereinafter, "CIS" will refer to these Defendants collectively).[1] Arguijo now moves for summary judgment (Dkt. No. 94), contending that CIS's interpretation of who constitutes a stepchild is arbitrary and capricious and therefore its denial of her self-petition must be set aside under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* In addition, she contends that CIS's interpretation violates the equal protection component of the Due Process Clause of the Fifth Amendment to the United States Constitution. CIS has also moved for summary judgment (Dkt. No. 99), arguing that its denial of Arguijo's self-petition was lawful under both the APA and the Fifth Amendment. As explained below, Arguijo's motion is denied and CIS's motion is granted.

## BACKGROUND[2]

### I. Arguijo and Her Abusive Stepfather

Arguijo was born in Honduras on October 23, 1987, and she is a national and citizen of that country. (Defs.' Resp. to Pl.'s Statement of Material Facts ("DRPSF") ¶ 1, Dkt. No. 99-2.) On June 24, 1998, Arguijo entered the United States on a B1/B2 nonimmigrant visitor visa to live with her mother. (*Id.* ¶ 9.) One year later, Arguijo's mother married F.M., a United States citizen. (*Id.* ¶ 10.) Because of her mother's marriage, Arguijo became F.M.'s stepchild. (*Id.*)

For about four years, Arguijo lived with her mother and F.M. (*Id.* ¶ 12.) During that time, Arguijo's stepfather abused her physically, sexually, and psychologically. (*Id.* ¶ 13.) In particular, F.M. hit Arguijo in the face and left physical marks on her body. (*Id.* ¶ 14.) He also beat Arguijo's mother at least twice a week and if Arguijo or her siblings tried to intervene, F.M. would hit them

---

[1] Since this action was filed, all the individuals originally named as Defendants in their official capacities have left their positions. The current officeholders have been substituted as Defendants consistent with Federal Rule of Civil Procedure 25(d).

[2] All material facts are undisputed.

too. (*Id.* ¶ 15.) F.M. told Arguijo and her siblings that they "didn't have the right to eat in the house with him or share his food." (*Id.* ¶ 16.) And if they tried to take food, F.M. would hit them. (*Id.*) At times, F.M. would expose himself to Arguijo by emerging naked from the bathroom. (*Id.* ¶ 18.) Arguijo and her siblings were so fearful that F.M. would rape them that they slept with knives under their pillows. (*Id.* ¶ 17.) F.M. also threatened to report Arguijo and her siblings to immigration. (*Id.* ¶ 19.)

No longer able to endure F.M.'s abuse, Arguijo ran away from home in 2003 when she was fifteen. (*Id.* ¶ 20.) On April 19, 2004, Arguijo's mother obtained a judgment of divorce, terminating her marriage to F.M. (*Id.* ¶ 21.) Shortly thereafter, Arguijo's mother passed away. (*Id.* ¶ 22.) The last time Arguijo saw her stepfather was at her mother's funeral. (*Id.* ¶ 23.)

## II.     The Self-Petitioning Provisions of the Violence Against Women Act

Under the immigrant provisions of the VAWA, 8 U.S.C. § 1154, aliens who are victims of domestic violence are given the opportunity to self-petition for legal status. (DRPSF ¶ 25.) By self-petitioning, an alien may seek legal status without having to depend on her abuser to petition on her behalf. (*Id.*); 8 U.S.C. § 1154. The goal of the VAWA's immigrant provisions is "to remove immigration laws as a barrier that [keeps] battered immigrant women and children locked in abusive relationships." (DRPSF ¶ 26.) In order to self-petition, the alien must demonstrate the existence of a qualifying relationship. (*Id.* ¶ 27.) One such qualifying relationship is being

> the child of a citizen of the United States . . . who is a person of good moral character, who is eligible to be classified as an immediate relative under [8 U.S.C. §] 1151(b)(2)(A)(i) . . . and who resides, or has resided in the past, with the citizen parent . . . if the alien demonstrates . . . that the alien has been battered by or has been the subject of extreme cruelty perpetrated by the alien citizen's parent.

8 U.S.C. § 1154(a)(1)(A)(iv); *see also* 8 U.S.C. § 1151(b)(2)(A)(i) ("The term 'immediate relatives' means the children, spouses, and parents of a citizen of the United States . . . ."). For

purposes of the VAWA's self-petitioning provisions, a child is defined to include "an unmarried person under twenty-one years of age who is . . . a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred." (DRPSF ¶ 29); 8 U.S.C. § 1101(b)(1)(B).

### III.    CIS Rejects Arguijo's Self-Petition

On October 17, 2008, Arguijo filed an I-360 self-petition as an abused child of a U.S. citizen. (*Id.* ¶ 37.) Arguijo's petition set forth the alleged abuse she suffered at the hands of F.M. and stated that she met the definition of a child under 8 U.S.C. § 1101(b)(1)(B) due to the stepchild-stepparent relationship between her and F.M., a United States citizen, that came into existence prior to her 18th birthday. (*Id.* ¶ 39.) In a written decision, CIS denied Arguijo's petition solely based on its finding that a qualifying relationship did not exist. (*Id.* ¶ 41.) To qualify as a stepchild eligible to self-petition, Arguijo had to prove that the marriage between her mother and F.M. terminated after the date she filed her self-petition. (*Id.* ¶ 43.) Because the divorce preceded the self-petition, however, CIS took the position that Arguijo had to prove there was a continuing relationship between herself and her stepfather, citing the Board of Immigration Appeals's decision in *Matter of Mowrer*, 17 I&N Dec. 613 (BIA 1981). (DRPSF ¶ 44.) Arguijo appealed CIS's decision but that appeal was denied by CIS's Administrative Appeals Office. (*Id.* ¶¶ 48–52.) Its decision stated that for Arguijo to remain eligible as a child under 8 U.S.C. § 1101(b)(1)(B) following the legal termination of the marriage creating the step-relationship, she had to "establish that a family relationship has continued to exist as a matter of fact between the stepparent and stepchild." (*Id.* ¶ 52.)

**DISCUSSION**

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). Arguijo contends that summary judgment should be entered in her favor because CIS's denial of her I-360 self-petition was arbitrary and capricious and thus should be set aside under the APA. And even if CIS's denial could survive review under the APA, its insistence that Arguijo demonstrate she had a continuing relationship with her abusive stepfather violates the equal protection component of the Fifth Amendment's Due Process Clause. CIS, meanwhile, contends that summary judgment should be entered in its favor because Arguijo does not qualify as a child entitled to file a self-petition because she is no longer a stepchild within the plain meaning of the word. CIS also argues that its continuing relationship requirement provides an accommodation for stepchildren whose parents have divorced for the purpose of ameliorating the harsh result that the plain language of the statute may cause for such children and raises no issues under either the APA or the Fifth Amendment.

**I.      Reasonableness of CIS's Decision Under the APA**

In her summary judgment motion, Arguijo contends that CIS's denial of her self-petition was arbitrary and capricious because the agency grafted a continuing relationship requirement onto the plain meaning of the word "stepchild." In its cross-motion, CIS explains that it held that for an individual to be considered a stepchild under the plain language of the statutory definition of "child," there must be a current marriage between the individual's parent and stepparent. Only after determining that Arguijo was not a stepchild under the statute's plain language did CIS then

evaluate whether she continued to have a relationship with F.M. following her mother's divorce such that she could be still be regarded as a stepchild under a relaxed interpretation of the word. Arguijo responds that CIS's interpretation of the plain meaning of stepchild to require a current marriage and its application of the relaxed definition are both arbitrary and capricious in the VAWA context.

Under the APA, a court must "set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The scope of a court's review under the arbitrary and capricious standard is narrow and the court "is not to substitute its judgment for that of the agency." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (internal quotation marks omitted). When reviewing agency action, a court "must assess, among other matters, whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (internal quotation marks omitted).

Among the categories of individuals considered a child for purposes of a VAWA self-petition is "an unmarried person under twenty-one years of age who is . . . a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred." 8 U.S.C. § 1101. According to CIS, for a person to qualify as a stepchild under this definition, there must be a valid marriage between the stepchild's parent and stepparent.

CIS claims that the use of the present tense in the definition of "child," such that a child "*is*" a stepchild, requires that the individual demonstrate she has a legal step-relationship at the time she files her self-petition. Indeed, "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992); *see also Carr v. United States*, 560

6

U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress'

choice of verb tense to ascertain a statute's temporal reach."). Thus, here, the Court understands

the term "child" to include an individual that is currently a stepchild. The question is whether an

individual remains a stepchild even after the marriage giving rise to that status ends.

Because the statute does not define the term "stepchild," the Court looks to dictionary

definitions of the term to determine its ordinary and plain meaning. *See United States v. Patel*,

778 F.3d 607, 613 (7th Cir. 2015) ("When interpreting the meaning of undefined statutory terms,

the cardinal rule is that words used in statutes must be given their ordinary and plain meaning. To

determine the plain meaning of words, we frequently look to dictionary definitions." (internal

quotation marks and citation omitted)). Black's Law Dictionary defines stepchild to mean the

"child of one's *spouse* by a previous partner." Black's Law Dictionary (10th ed. 2014) (emphasis

added). Ordinary dictionaries define stepchild similarly. *See, e.g.*, *Stepchild*, Merriam-Webster,

https://www.merriam-webster.com/dictionary/stepchild (last visited Jan. 14, 2020) ("[A] child of

one's *wife or husband* by a former partner." (emphasis added)); *Stepchild*, Dictionary.com,

https://www.dictionary.com/browse/stepchild?s=t (last visited Jan. 14, 2020) ("[A] child of one's

*spouse* by a previous marriage." (emphasis added)). Each of these definitions envisions a

stepchild as the product of a valid current marriage between her natural parent and another. It

therefore follows that a child ceases to be a stepchild when her parent and stepparent's marriage

ends, no matter whether due to death or divorce. If stepchild status endures beyond the marriage,

the Court would expect those definitions to be more specific; for example, they might say "a child

of one's current or former spouse by a previous marriage."

Arguijo argues that CIS's interpretation of the statute's definition of child as not covering

former stepchildren is flawed. Specifically, she claims that the use of the present tense in a statute,

standing alone, is not enough to exclude past actions or events. It is true that the Seventh Circuit

has recognized that the present tense can be versatile. *United States v. Balint*, 201 F.3d 928, 933

(7th Cir. 2000). At the same time, where, as here, a statute uses the simple present tense, "[i]t

often indicates contemporaneous action." *Id.* Moreover, the Dictionary Act, 1 U.S.C. § 1, instructs

that in "determining the meaning of any Act of Congress, unless the context indicates

otherwise . . . words used in the present tense include the future as well as the present." Yet

Arguijo asks this Court to interpret the word "is" as encompassing the past. Put differently,

Arguijo claims that she should presently be considered a child under the statute because she was

once a stepchild of a United States citizen. The present tense may be versatile, but it cannot

stretch that far. *See Carr*, 560 U.S. at 448 ("By implication . . . the Dictionary Act instructs that

the present tense generally does not include the past."); *see also Winston Labs v. Sebelius*, No. 09

C 4572, 2009 WL 8631071, at *6 (N.D. Ill. Dec. 11, 2009) ("Defendants take the untenable

position that the Court should read present tense words to include the ***past*** as well as the

present.").

Reading the ordinary meaning of stepchild in conjunction with the use of the present tense

in the statutory definition of "child," CIS reasonably concluded that child does not include a

former stepchild. The only court in this District to have addressed this issue reached the same

conclusion, finding "strong support for [the] position that the definition of 'stepchild' should be

narrowly interpreted to include only persons in a current legal stepchild-stepparent relationship at

the time of filing" a self-petition. *Zacharevskaja v. Chertoff*, No. 04 C 4542, 2006 WL 2795013,

at *6 (N.D. Ill. Sept. 28, 2006). The *Zacharevskaja* court rejected the contention that "once a

stepchild relationship has been created, it never terminates," holding "that theory is negated by the

plain language of the statutes and regulation governing self-petitions by battered children." *Id.* At

least one other district court has agreed with the *Zacharevskaja* court's conclusion. *See Herzog v. Holder*, No. 13-5125, 2014 WL 559562, at *5 (E.D. La. Feb. 12, 2014).

In this case, there is no dispute that Arguijo's mother divorced F.M. well before Arguijo filed her self-petition. Once her mother's marriage ended, Arguijo therefore ceased to be F.M.'s stepchild. Consequently, at the time Arguijo filed her self-petition, she was not a stepchild under the plain language of the statute. However, CIS did not end its analysis there. Instead, it proceeded to determine whether Arguijo had a continuing relationship with her former stepfather. This analysis was an application of a prior Board of Immigration Appeals ("BIA") precedential decision, *Matter of Mowrer*, 17 I&N Dec. 613 (BIA 1981).

The petitioner in *Mowrer* was a United States citizen who was applying for immediate relative status for the natural children of his estranged wife. In that decision, the BIA concluded that "where there has been a legal separation or where the marriage has been terminated by divorce or death," the appropriate inquiry for determining whether a step-relationship exists is "whether a family relationship has continued to exist as a matter of fact between the stepparent and stepchild." *Id.* at 615. But in *Mowrer*, while the petitioner's marriage was no longer viable, he was neither legally separated nor divorced from his wife at the time. Thus, the BIA statement requiring a continuing relationship in cases of divorce could be viewed as dicta. Nonetheless, the BIA subsequently reaffirmed and applied the continuing relationship requirement in *Matter of Mourillon*, 18 I&N Dec. 122, 125 (1981), which did involve a post-divorce step-relationship. At the same time, the BIA confirmed that the continuing relationship requirement was not based on the plain language of the word "stepchild." Rather, the BIA only applied that test after recognizing that "step-relationships can be terminated by the death of or divorce of the parties whose marriage created the step-relationship." *Id.*

9

Neither *Mowrer* nor *Mourillon* involved the VAWA's immigrant provisions or abusive

relationships. And Arguijo contends that CIS's reading of the statute to exclude former

stepchildren who fail to maintain a continuing relationship with their abuser creates a senseless

result that contravenes Congress's express purpose for enacting the VAWA's immigration

provisions. She contends that Congress enacted the VAWA's self-petitioning provisions to

remove the abuser from the petitioning process; yet, under CIS's interpretation, an abused former

stepchild who wishes to self-petition is effectively forced to remain in an abusive relationship.

Arguijo is correct that the VAWA's self-petitioning provisions were intended to "allow a

petitioner to self-petition without reliance on the abusive U.S. citizen or lawful permanent

resident." (DRPSF ¶ 25.) In particular, the provisions were meant to "prevent the citizen or

resident from using the petitioning process as a means to control or abuse an alien spouse." *Toro*

*v. Sec'y of U.S. Dep't of Homeland Sec.*, 707 F.3d 1224, 1230 (11th Cir. 2013) (quoting H.R. Rep.

No. 103-395 (1994)). Contrary to Arguijo's assertion, CIS's interpretation of stepchild does not

undermine that goal. Normally, a former stepchild may rely on her natural parent to petition on

her behalf, even where the natural parent is also an alien. *See* 8 U.S.C. § 1154(a)(1)(A)(iii)(I),

(a)(1)(A)(iii)(II)(aa)(CC) (allowing an alien who was a bona fide spouse of a United States citizen

to self-petition on behalf of herself ***and her children*** within two years of the legal termination of

her marriage, where the alien can demonstrate that either she or ***any of her children*** were the

subject of battery or extreme cruelty perpetrated by the spouse and there was a connection

between that battery or extreme cruelty and the termination of the marriage). Thus, CIS's

interpretation does not coerce the former stepchild into maintaining a relationship with her abuser

for immigration purposes. Rather, in the usual case, the former stepchild need not maintain any

relationship with the abusive stepparent and may instead rely on her natural parent to petition on her behalf.

Unfortunately for Arguijo, her mother died just months after divorcing F.M. and apparently did not have the opportunity to file a self-petition before passing. Thus, in Arguijo's circumstances, the continuing relationship requirement provides an uneasy fit. Indeed, the continuing relationship requirement arose in cases that did not deal with abuse and provides an accommodation for circumstances where a strict, plain language interpretation of the statutory text leads to a harsh result. *See Zacharevskaja*, 2006 WL 2795013, at *7 (" [CIS's] decision to recognize that a former stepchild might maintain the relationship, despite a legal status beyond the stepchild's control, is a reasonable interpretation of § 1101(b)(1) and § 1154(a)(1)(A)(iv) that adheres in general to the plain language of the statute but attempts to create some leeway for individual circumstances.") But despite the plain language interpretation of stepchild generating a harsh result for Arguijo and the continuing relationship accommodation providing no help, neither the VAWA nor the APA require CIS to relax its interpretation of the statute further to account for her circumstances. Indeed, the VAWA self-petitioning provisions simply allow individuals who otherwise would be eligible for immediate relative classification to self-petition; it does not expand the categories of people who may properly be classified as an immediate relative in the first instance.

Finally, Arguijo argues in her summary judgment motion that CIS violates the *Chenery* doctrine by seeking to defend the denial of Arguijo's self-petition on grounds not invoked by the agency. In *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), the Supreme Court held that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds

invoked by the agency." Here, Arguijo claims that CIS has never previously stated—either in her case or in its past precedent—that the plain meaning of stepchild requires a current marriage between a stepchild's natural parent and the stepparent.

But she is incorrect. While CIS's Administrative Appeals Office did not separately address whether Arguijo was a stepchild under the plain language of the statute, that was because it understood that a negative answer necessarily followed from the undisputed fact of Arguijo's mother's divorce. Nonetheless, in denying Arguijo's self-petition, the Administrative Appeals Office addressed Arguijo's contention that applying *Mowrer* would require stepchildren to endure further abuse. It concluded that if it did not apply *Mowrer*, "stepchildren such as the petitioner in this case would be disqualified on the date of their parents divorced [sic], as the statute requires the qualifying relationship to exist at the time the self-petition is filed." (Pl.'s Statement of Material Facts, Ex. M at 5–6, Dkt. No. 94-15.) That analysis makes clear that CIS does not consider an individual to be a stepchild under the plain meaning of the statute once the marriage giving rise to the step-relationship has terminated. Such an interpretation is also consistent with binding BIA precedent. *See Mourillon*, 18 I&N Dec. at 125 ("Unlike consanguineous relationships, step-relationships can be terminated by the death or divorce of the parties whose marriage created the step-relationship.").

In sum, under the plain language of the statute, Arguijo was not a child of a United States citizen at the time she filed her self-petition to adjust her immigration status because she was no longer F.M.'s stepchild. Therefore, CIS's decision to reject her petition was not arbitrary and capricious. Nor was it arbitrary and capricious for CIS to apply the continuing relationship test to determine whether she could be considered a stepchild under its relaxed interpretation of the term. Consequently, the Court cannot set aside CIS's rejection of Arguijo's self-petition under the APA.

## II. Equal Protection Component of the Fifth Amendment

Arguijo also contends that, even if CIS's rejection of her self-petition was not arbitrary and capricious in violation of the APA, CIS violated her equal protection rights under the Fifth Amendment by treating the stepchildren of divorced parents differently than other children.

A court's "review in immigration cases is necessarily of a limited scope because 'the power over aliens is of a political character and therefore subject only to narrow judicial review.'" *Turkhan v. Perryman*, 188 F.3d 814, 828 (7th Cir. 1999) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). The Supreme Court has been clear that "Congress need not treat all aliens alike if there is a legitimate reason for treating them differently." *Id.* "Thus, a classification in the immigration context that treats similarly situated groups of aliens differently violates equal protection only if there is no rational basis for doing so." *Id.* at 628–29; *see also LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (finding groups similarly situated where they are "identical or directly comparable in all material respects"). Rational basis review is limited and a governmental action will fail rational basis review "if no sound reason for the action can be hypothesized." *Lopez Ramos v. Barr*, 942 F.3d 376, 381 (7th Cir. 2019). Here, Arguijo contends that under the statute, stepchildren are unjustifiably treated differently than four other categories of individuals recognized as children for purposes of the statute. *See* 8 U.S.C. § 1101(b)(1). This is so, she contends, even though stepchildren of divorced parents are similarly situated to other abused non-citizen children seeking a change in immigration status under the VAWA's immigration provisions.

But this Court finds that Congress may rationally treat stepchildren differently precisely because only the stepchild-stepparent relationship, once created, can be terminated. This differentiates step-relationships from the relationships underlying the other categories of

individuals making up the statutory definition of child, such as children born in wedlock, legitimated children, or adopted children. Without more, the only relationship tying the stepparent and the stepchild together is the marriage between the stepparent and the stepchild's natural parent. When that marriage ends either by death or divorce, so does the stepchild-stepparent relationship.

By contrast, for the other categories of individuals recognized as children under the statute, there exists some direct connection between the parent and child, such as a biological connection or a legal adoption. Not only do such relationships endure no matter the status of the parents' marriage, the relationships are not dependent on the existence of a marriage at all. Given the terminable nature of the step-relationship, Congress was permitted to conclude that the bond between a stepchild and her former stepparent was weaker than for other children. This Court cannot find that Congress acted irrationally in reaching that conclusion. *See Plyler v. Doe*, 457 U.S. 202, 216 (1982) ("[T]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." (internal quotation marks omitted)). Although there may be a strong argument "the line should have been drawn at a different point," that determination is nonetheless an issue of policy "entrusted exclusively to the political branches of our Government" for which this Court cannot substitute its own judgment. *Fiallo*, 430 U.S. at 798.

Arguijo further argues that CIS violated her equal protection rights by applying *Mowrer* to her circumstances and requiring her to have a continuing relationship when other individuals recognized as children under the statute have no such requirement. But again, given the weaker bond between stepparent and stepchild, CIS could rationally have deemed that the stepchild is less at risk of abuse after the marriage connecting her to her stepparent is dissolved. But where the

14

stepchild continues to have a relationship with her stepparent after that marriage ends, she remains at imminent risk of abuse and CIS fulfills the purpose of the VAWA's immigrant provisions by removing the stepparent from the petitioning process.

Applying the continuing relationship requirement in the abuse context could, in some circumstances, incentivize a victim to maintain a relationship with her abuser. Nonetheless, its application even in cases of abuse recognizes that some stepchildren, for reasons unrelated to their immigration status, may not be able to end their relationship with an abusive stepparent after the termination of the marriage giving rise to the step-relationship. And, again, the continuing relationship requirement was devised to relax the harsh result of the plain language interpretation of stepchild in other contexts. Where the plain language interpretation of stepchild creates no equal protection violation, it would be anomalous to hold that relaxation of that interpretation to avoid a harsh result in many circumstances would result in a violation simply because it provides no relief in this instance.

In sum, the finds that Congress's distinction between former stepchildren and other types of children was rational. And CIS had a rational basis for requiring a stepchild to demonstrate a continuing relationship with her former stepparent in order to self-petition. Consequently, the Court finds that CIS's denial of Arguijo's self-petition does not violate the equal protection component of the Due Process Clause of the Fifth Amendment.

**CONCLUSION**

For the foregoing reasons, Arguijo's motion for summary judgment (Dkt. No. 94) is denied while CIS's motion for summary judgment (Dkt. No. 99) is granted. The Clerk will enter Judgment in favor of CIS.

ENTERED:

Dated:  January 15, 2020

_____
Andrea R. Wood
United States District Judge